# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEVEN MARVIN SORKNESS,

*Plaintiff*,

v.

UNITED STATES OF AMERICA,

*Defendant.*

Civil Action No. 17-2248 (RDM)

## MEMORANDUM OPINION

Congress created the Servicemembers Group Life Insurance Traumatic Injury Protection Program—often referred to as the "TSGLI" Program—in 2005 to provide monetary assistance to servicemembers who suffer traumatic injuries. *See* Pub. L. No. 109-13, § 1032(a)(2), 119 Stat. 231, 257 (2005). Under this Program, servicemembers are "automatically . . . insured for traumatic injur[ies]," and any member who suffers a "qualifying loss" is entitled to payment of between $25,000 and $100,000, depending on "the severity of the qualifying loss." 38 U.S.C. § 1980A(a) & (d). The statute and implementing regulations, in turn, define qualifying losses as including, among other things, a traumatic injury other than a traumatic brain injury resulting in the inability of the servicemember to perform at least two Activities of Daily Living ("ADLs") for at least thirty consecutive days. *Id.* at § 1980A(b); 38 C.F.R. § 9.20(e)(6) & (f)(20). If the servicemember's inability to perform at least two ADLs persists longer than 30 consecutive days under this standard, the size of the award increases from $25,000 up to $100,000—in increments of $25,000 for each successive 30-day period up to a total of 120 days. 38 C.F.R. § 9.20(f)(20).

Plaintiff Steven Marvin Sorkness sustained significant injuries in an (off-duty) motorcycle accident while he was a member of the U.S. Army. *See* Dkt. 1. He applied for, but was denied, TSGLI benefits and, after exhausting his rights to administrative appeal, he brought this action seeking judicial review of the decision of the Army Board for the Correction of Military Records ("ABCMR") denying his claim. *See id.* Before Defendant filed a responsive pleading, however, the parties stipulated to stay the action and to a voluntary remand to the ABCMR, Dkt. 6, and the Court agreed, Minute Order (Jan. 8, 2018). On remand, the ABCMR once again concluded that Sorkness is not entitled to TSGLI benefits because hr had failed to meet "his burden of proving by a preponderance of the evidence that he [had] incurred the loss of [two] or more ADLs for any period of 30 consecutive days." AR 507.

In light of that decision, the Court lifted the stay and set a schedule for Defendant to certify the administrative record and for the parties to file cross-motions for summary judgment. Minute Orders (June 19, 2018). Those motions, Dkt. 11; Dkt. 12, are now before the Court for decision. For the following reasons, the Court will grant Defendant's motion for summary judgment and will deny Plaintiff's cross-motion.

## I. BACKGROUND

On June 18, 2009, Plaintiff was found in a ditch beside Georgia Highway 30 following a motorcycle accident. AR 14–15. He apparently lost consciousness after the crash and could not recall anything about the accident when he was found. *Id.* The Georgia State Patrol Trooper who responded to the accident "stated that he suspected that another motorist or crossing wildlife may have caused [Plaintiff] to lose control of his motorcycle." AR 495. Plaintiff's injuries included "a subarachnoid hemorrhage (bleeding inside the brain), facial abrasions, [and] bilateral hip, neck, back and shoulder injuries." *Id.* A CT scan revealed a non-displaced right sacral

fracture, and Plaintiff was limited in his ability to "toe-touch" or bear weight for six to eight weeks. AR 26. Plaintiff continued to receive treatment over the next several months. AR 44–50. During that time, he underwent cervical discectomy and fusion surgery in January 2010. *Id.*

On October 20, 2012, Sorkness applied for TSGLI benefits for the injuries he suffered as a result of the crash. AR 1–13. Under the TSGLI Program, servicemembers who suffer qualifying traumatic injuries during—although not necessarily connected to—their service are entitled to compensation ranging from $25,000 to $100,000. 38 U.S.C. § 1980A; 38 C.F.R. § 9.20. The statute prescribes certain qualifying conditions and delegates authority to the Secretary of Veterans Affairs to further define "qualifying losses." 38 U.S.C. § 1980A(b). Of relevance here, the implementing regulations specify that a servicemember who suffers a "[t]raumatic injury, other than [a] traumatic brain injury," that prevents the servicemember from performing at least two Activities of Daily Living for at least 30 consecutive days is entitled to payment of $25,000. 38 C.F.R. § 9.20(f)(20). The amount of the payment then escalates in increments of $25,000 if the servicemember is unable to perform at least two ADLs for at least 60, 90, and 120 consecutive days—up to a maximum payment of $100,000. *Id.* "The term 'inability to carry out the activities of daily living'" is defined to "mean[] the inability to independently perform two or more of the following six functions: (i) [b]athing[,] (ii) [c]ontinence[,] (iii) [d]ressing[,] (iv) [e]ating[,] (v) [t]oileting[,] [and] (vi) transferring." 38 U.S.C. § 1980A(b)(2)(D) (quoting *id.* § 1980A(b)(1)(H)); *see also* 38 C.F.R. § 9.20(e)(6)(vi).

Plaintiff claimed that his injuries from the June 2009 motorcycle crash caused 120 days of continuous inability to perform two ADLs, specifically bathing and dressing. AR 1–11. In support of Plaintiff's claim, Dr. Dennis Hopkins, a reviewing physician, certified he had "not observed the patient's loss, but . . . had reviewed [his] medical records." AR 13. Plaintiff's

claim was denied by a letter dated February 6, 2013. AR 59. The denial letter explained that, to qualify for TSGLI benefits for a traumatic injury (other than a traumatic brain injury) a claimant must demonstrate that he has "been unable to independently perform at least two [ADLs] for at least 30 consecutive days," and it concluded that the "medical documentation" submitted in support of Plaintiff's claim "did not support [his] inability to perform two or more ADLs for at least 30 consecutive days." AR 59.

Plaintiff sought reconsideration of that decision on April 25, 2013 and provided further details supporting his claim. AR 76–78. Among other things, Plaintiff submitted statements from two friends. According to the first friend, BB, she and others had helped Plaintiff with ADLs following the accident. AR 83–84. She explained, in particular, that Plaintiff needed help "moving in and out of bed, eating, dressing and bathing;" he needed "someone to drive him to and from doctor appointments;" and, due to complications resulting from his surgery, Plaintiff "needed help with just about everything, eating, dressing, changing bandages, bathing, in and out of bed and medication." *Id.* The second friend, PS, offered a similar assessment. He stated that, while Plaintiff was in the hospital, he needed constant care and that, after he was released, Plaintiff's friends continued to assist with his meals and with bathing and driving him to the pharmacy and doctor appointments. AR 85–86. On July 12, 2013, however, the U.S. Army Human Resources Command, Special Compensation Branch, denied Plaintiff's request for reconsideration. AR 221–22. The denial explained: "The medical documentation you submitted did not indicate that your injuries rendered you incapable of performing the ADLs of bathing and dressing that are covered by TSGLI standards *for 30 consecutive days or greater*." AR 221 (emphasis added).

Plaintiff appealed that decision on September 13, 2013, AR 236–47, but the Army denied his appeal, AR 262. That decision once again found that Plaintiff had failed to provide medical documentation sufficient to show that Plaintiff's injuries rendered him "incapable of performing the ADLs of bathing, continence, dressing, eating, toileting, or transferring . . . *for 30 consecutive days or greater*." AR 262 (emphasis added). This time the Army further explained that, if the claimant "is able to perform the activity by the use of accommodating equipment/adaptive measures (such as a cane, crutches, wheelchair, etc.), then the [claimant] is considered able to independently perform the activity." *Id*.

Plaintiff then sought review before the ABCMR. After reviewing the factual and procedural background, AR 447–51, the ABCMR determined that "[t]he evidence presented [did] not demonstrate the existence of a probable error or injustice," and it concluded that "the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned," AR 446.

Having exhausted his administrative options, Plaintiff then filed suit in this Court pursuant to 38 U.S.C. § 5107 ("The district courts of the United States shall have original jurisdiction of any civil action or claim against the Untied States founded upon this subchapter."). Before the Defendant filed a responsive pleading, however, the parties stipulated to the stay and to a voluntary remand of the action to permit the ABCMR to conduct "additional administrative proceedings." Minute Order (Jan. 1, 2018).

On remand, the ABCMR again denied Plaintiff's claim, explaining that "[i]n light of the evidence [in the] record, the applicant has not met his burden of proving by a preponderance of the evidence that he incurred the loss of 2 or more ADLs for any period of 30 consecutive days." AR 507. In reaching that conclusion, the ABCMR credited the evaluation of Plaintiff's medical

records provided in a detailed medical advisory opinion prepared by Colonel Roman Bilynsky, the Army Review Board Agency's Senior Medical Advisor.  AR 485.  According to that assessment, Plaintiff suffered "limited impairment or impact on [his] ability to perform ADLs, and [he] was certainly not impaired or impacted enough to be unable to perform 2 or more ADLs for 15, 30, 60, 90, 120 or more days."  AR 499.  Moreover, although Plaintiff did suffer a hairline fracture to this "right sacral alae," he suffered no "cognitive or intellectual impairment," and, according to Col. Bilynsky, "[t]he medical records note no significant difficulties with dressing, bathing, eating, continence, toileting, or transferring."  *Id.*  In sum, the evidence demonstrated that by July 24, 2009, Plaintiff was sufficiently recovered to return to duty—and thus, presumably, was not unable to perform two ADLs—and that, although Plaintiff suffered lower back pain and impairment of his mobility from June 18 to July 24, 2009, he was not so debilitated that he was unable to perform two ADLs for 30 *consecutiv*e days during that period. AR 505.

The ABCMR also found Plaintiff's evidence to the contrary insufficient.  His two lay witnesses, BB and PS, failed to identify two or more ADLs that Plaintiff was unable to perform for 30 consecutive days as a result of the motorcycle accident.  AR 506–07.  Although BB described difficulties Plaintiff encountered after undergoing neck surgery, the ABCMR noted that the surgery was "performed to address degenerative problems in his neck" and that "a degenerative condition is virtually the definitional opposite of one incurred from a traumatic force."  AR 506.  Finally, the ABCMR found that "[t]he opinion rendered by [Plaintiff's] certifying official," Dr. Hopkins, was not based on Dr. Hopkins's examination of Plaintiff—but, rather, on his review of Plaintiff's medical records—and was, accordingly, entitled to less

"evidentiary weight [than] the contemporaneously-made assessments rendered by [Plaintiff's] treating medical providers."  AR 507.

After the ABCMR denied Plaintiff relief on remand, the Court lifted the stay, Minute Order (June 16, 2018); Plaintiff filed an amended complaint, Dkt. 9; Defendant filed the administrative record, Dkt. 10; and the parties filed cross-motions for summary judgment, Dkt. 11; Dkt. 12.

## II.  LEGAL STANDARD

The Court may "hold unlawful and set aside" the ABCMR's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Although this standard of review is a "deferential" one, *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 233 (D.C. Cir. 2008), agency action must nevertheless be the product of "reasoned decisionmaking," *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983); *see also Fox v. Clinton*, 648 F.3d 67, 75 (D.C. Cir. 2012) (applying this standard to judicial review of agency adjudications).  Accordingly, courts will typically find an agency action to be "arbitrary and capricious" only "if the agency . . . relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency[] or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *State Farm*, 463 U.S. at 43.  Agency fact finding warrants considerable deference, moreover, so long as it is supported by substantial evidence."  5 U.S.C. § 706(2)(E).

# III.  ANALYSIS

## A.  Evidentiary Standard

Sorkness first contends that the ABCMR erred in applying the "preponderance of the evidence" test, rather than the more favorable "benefit of the doubt" standard.  Dkt. 11 at 18–20. By statute, the "benefit of the doubt" standard applies to "cases before the Secretary [of Veterans Affairs] with respect to benefits under laws administered by the Secretary."  38 U.S.C. § 5107(b) (emphasis added).  Sorkness argues that because TSGLI is a "benefit[] under laws administered by the Secretary," the "benefit of the doubt standard applies."  *See* Dkt. 11 at 18–19 (citing 38 U.S.C. § 5107(b)).  And thus, he contends, the ABCMR's application of the preponderance of the evidence standard amounts to an error of law, requiring this Court to vacate the ABCMR's decision.  *See* Dkt. 11 at 18–19.

But Sorkness ignores both the plain language of the "benefit of the doubt" statute, 38 U.S.C. § 5107(b), and the regulations promulgated by the Department of Veterans Affairs ("VA" to implement the TSGLI program, which considered the applicability of the benefit of the doubt standard to TSGLIA claims, Traumatic Injury Protection Rider to Servicemembers' Group Life Insurance, 72 Fed. Reg. 10362 (Mar. 8, 2007) (codified at 38 C.F.R. Part 9).  The statute governs the Secretary of Veterans Affairs' consideration of "lay and medical evidence."  38 U.S.C. § 5107(b). It does not apply to determination, such as that at issue here, made by the Army or the Department of Defense.  *See id*.; *see also* 38 U.S.C. § 1980A(f) (setting forth process for TSGLI benefits claims).  The Department of Veterans Affairs, moreover, considered—and rejected—the same argument that Sorkness makes here when it adopted regulations implementing the TSGLI program.  The agency reasoned that "[d]ecisions about entitlement to TSGLI, unlike decisions regarding entitlement to VA compensation and pension, are made by each uniformed service.  It

would therefore be inappropriate for VA to promulgate a benefit-of-the-doubt rule in this rulemaking to be applied by DoD in making decisions about TSGLI." 72 Fed. Reg. at 10,363. Because Sorkness proffers no other basis for concluding that the "benefit of the doubt" rule applies to ABCMR decisions on TSGLI benefits, the Court concludes that the ABCMR did not err by applying the preponderance of the evidence standard to his claim.

## B. Merits of Plaintiff's Claim

Even putting the standard of proof aside, Plaintiff contends that the ABCMR's decision was arbitrary and capricious and must therefore be set aside under 5 U.S.C. § 706(2)(A). *See* Dkt. 11 at 18. In Plaintiff's view, the ABCMR erred in failing to accord sufficient weight to the opinion of Plaintiff's certifying doctor, Dr. Hopkins, *id.* at 25–26; failed to credit the "unrebutted" statements of BB and PS, *id.* at 32; and placed too much weight on the "conclusory and subjective opinions" of Col. Bilynsky, *id.* at 29. The Court disagrees.

The ABCMR's final decision, like the administrative decisions that preceded it, turns on three premises. First, despite Plaintiff's efforts to invoke the "benefit of the doubt" standard, TSGLI claimants bear the burden of demonstrating by a preponderance of the evidence that they sustained a qualifying loss. AR 504. Second, a traumatic injury (other than a traumatic brain injury) constitutes a qualifying loss only if it results in the claimant's inability to perform two ADLs for at least 30 "consecutive day[s]." 38 C.F.R. § 9.20(f)(20). Third, even if Plaintiff's medical records and caregiver statements might show that he was—at times—unable to perform two ADLs, there is no evidence in the record that the injuries he suffered in the motorcycle crash resulted in his inability to perform two ADLs for 30 or more *consecutive* days. AR 505.

Starting with Dr. Hopkins's certification, the ABCMR correctly observed that he never examined Plaintiff but, instead, merely reviewed his medical records. AR 507. As a result, the

ABCMR concluded that Dr. Hopkins's opinion "provide[d] very little in the way of a substantive contribution to the inquiry whether [Plaintiff] suffered the loss of 2 ADLs for 30 consecutive days." *Id.* The ABCMR, accordingly, decided to place "greater evidentiary weight [on] the contemporaneously-made assessments rendered by [Plaintiff's] treating medical providers than the perfunctory assessment offered by Dr. [Hopkins]." *Id.* The Court has itself reviewed the underlying medical records and concurs in the ABCMR's conclusion that those records—which provided the sole basis for Dr. Hopkins's certification—do not show that Plaintiff was unable to perform two or more ADLs for 30 consecutive days. The Court does not doubt that there were days when Plaintiff could not perform two ADLs, and the Court will assume without deciding that such days occurred weeks after the accident. But, even so, there is no evidence in the medical records that Plaintiff was unable to do so day-after-day for thirty days in a row—let alone the sort of evidence that would require the Court to set aside the ABCMR's decision as unsupported by substantial evidence. Because the statute and regulations require that type of continuity, the ABCMR reasonably (and, indeed, correctly) concluded that neither Plaintiff's medical records, nor Dr. Hopkins's corresponding certification, were sufficient to establish that Plaintiff suffered a "qualifying loss."

Nor do the statements from Plaintiff's caregivers, BB and PS, fill this evidentiary gap. Plaintiff stresses that BB and PS offer firsthand, percipient accounts of his inability to perform two or more ADLs, and he notes that at least one court has set aside a denial of TSGLI benefits on the ground that the agency did not give appropriate weight to a caregiver's statement. Dkt. 11 at 28 (citing *Koffarnus v. United States*, 175 F. Supp. 769, 778 (W.D. Ky. 2016)). What he fails to grapple with, however, is the fact that the ABCMR carefully assessed BB and PR's statements, and reasonably (and, indeed, correctly) determined that neither statement "indicate[s]

that [Plaintiff required assistance with basic tasks] for 30 consecutive days." AR 506 (BB); AR 507 (PR's statement does not indicate that "assistance was provided for any particular length of time, much less 30 consecutive days"). Without that critical element, the caregiver statements do not establish that Plaintiff sustained a qualifying loss.

Plaintiff next assails the ABCMR's reliance on Col. Bilynsky's "medical advisory opinion," as "not based on any direct observation or treatment of the Plaintiff," and "wholly inconsistent with the record in this case." Dkt. 11 at 29. The former observation is correct; the latter is not. To be sure, neither Dr. Hopkins nor Col. Bilynsky directly observed Plaintiff's medical condition and both relied solely on a review of his medical records. That observation, however, glosses over the differences in the two opinions. Dr. Hopkins's opinion is conveyed (1) in a single paragraph, which describes Plaintiff's injuries, reports that he underwent cervical disc surgery, and notes that Plaintiff "continued" to experience "cervical and lumbar pain" until March 9, 2010, and (2) in two entries on a form, one indicating that Plaintiff needed "assistance . . . to bathe and dry lower extremities" between June 18, 2009 and March 9, 2010, and one indicating that he needed assistance "to put on pants, socks, and shoes" during that same period. AR 288–91. Dr. Hopkins did not, however, identify any basis in Sorkness's medical records or any other contemporaneous documentation supporting these latter two assertions. And, indeed, those contemporaneous medical records do not support those conclusions.

Col. Bilynsky's medical advisory opinion, by contrast, incorporates the relevant medical records and adds "reviewer notes" explaining the significance of particular entries and treatment plans. AR 465–85. It explains, for example, that the medical record notation "No OT (occupational therapy) at this time" indicated that Plaintiff did not have an impairment that prevented him from completing ADLs, AR 470, and that other notations indicating that the

Plaintiff was "ambulatory" and did not require crutches or a wheelchair supported the same conclusion, AR 471–74. After reviewing all of the relevant records, Col. Bilynsky found no medical evidence that Plaintiff was or is incapable of performing ADLs for 30 consecutive days. AR 483. The ABCMR's decision to rely on that well-documented conclusion, as opposed to Dr. Hopkins's "perfunctory assessment" of Plaintiff's ability to perform ADLs, AR 507, was not only reasonable, but entirely consistent with the evidence.

Finally, Plaintiff contends that Col. Bilynsky's medical advisory opinion erroneously relied on a TSGLI guidance document related to the use of adaptive equipment in its analysis and that this error, in turn, infected the ABCMR's findings. Dkt. 11 at 22–23 (citing AR 484). The Court is, again, unpersuaded. First, and most significantly, Plaintiff misunderstands what the medical advisory opinion said. Although noting that the guidance requires consideration of whether the servicemember can perform ADLs with "accommodating equipment, such as a cane, walker, [or] commode," the medical advisory opinion concluded that "[t]he medical records note no significant difficulties with dressing, bathing, eating, continence, toileting, or transferring" and that, in any event, the relevant "compensatory strategies for ADLs" include the "use of" the claimant's "fully functioning non-dominant hand/arm [to] accomplish the task." AR 484. There is no indication in Plaintiff's medical records or in the medical advisory opinion that the use of equipment, like a cane or wheelchair, was ever at issue, and the use of a non-dominant hand or arm provides an ample basis to deny a claim, irrespective of the guidance. But, even if this case turned on the question of whether the guidance constitutes the best reading of the statute and regulations, the phrase "independently perform" is best understood, in context, to mean "to perform without the assistance of a third party"—not "without the assistance of a cane or similar

equipment." *See* Webster's Third New International Dictionary at 1148 (1993) (defining "independent" to mean "not requiring or relying on others").

For all these reasons, the Court is unconvinced that the ABCMR decision is arbitrary and capricious or unsupported by substantial evidence. To the contrary, as the ABCMR found—like all the deciding officials before it—there is no evidence in the record that Plaintiff was unable to perform two ADLs for *thirty consecutive* days, and thus the ABCMR correctly concluded that he was ineligible for TSGLI benefits.

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's motion for summary judgment, Dkt. 11, and will **GRANT** Defendant's cross-motion for summary judgment, Dkt. 12.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 17, 2019